**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

JOEL ACEY,

                         Plaintiff,

v.                                              CIVIL ACTION NO.  2:13-cv-04916

BOB EVANS FARMS, INC. et al.,

                         Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending is Defendant Bob Evans Farms, LLC's ("Bob Evans")[1] motion to dismiss. Plaintiff Joel Acey ("Acey") did not respond to the motion. For the reasons that follow, the Court **GRANTS** the motion to dismiss.  (ECF 3.)

*I.        BACKGROUND*

The following allegations are drawn from Acey's Complaint and are construed in the light most favorable to him.

At the times relevant to this complaint, Bob Evans owned and operated a restaurant named Bob Evans Restaurant ("the Restaurant") in Kanawha City, West Virginia.  (ECF 1-1 at 3.)  This restaurant was open to the general public.  (*Id.*)  On December 26, 2010, Acey, who is African American (*id.* at 4), entered Bob Evans Restaurant with his daughter in order to purchase a meal (*id.* at 3).  Acey asked to be seated, and specifically asked to be seated in the front of the

---

[1] Bob Evans advises the Court in its motion that it has been incorrectly captioned in the Complaint as "Bob Evans Farms, Inc."  (ECF 4 at 1.)

restaurant, which was not busy and where space was available.  (*Id.* at 3.)  The hostess grabbed menus and took Acey to the back of the restaurant, where she slammed the menus on the table and said, "You damned idiot."  (*Id.*)

Thereafter, two waitresses indicated to Acey that they had heard what the hostess had said, and both apologized to Acey.  (*Id.*)  Acey asked to speak with the manager, and, thereafter, the manager also told Acey that he was very sorry and that the incident should not have happened.  (*Id.* at 4.)  Acey was offered a free meal, but declined the offer.  (*Id.*)

On December 11, 2012, Acey filed suit against Bob Evans in the Circuit Court of Kanawha County, West Virginia.  (*Id.*)  The Complaint alleges, as pertinent here, that Bob Evans intentionally discriminated against Acey based on his race and denied him access to and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of the Bob Evans Restaurant because of his race, in violation of 42 U.S.C. § 1981 and Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a, *et seq.*, ("Title II"), as well as the West Virginia Human Rights Act ("WVHRA").  (*Id.* at 5.)

After being served with a summons and copy of the complaint (ECF 1-1 at 7, 14), Bob Evans removed the case to federal court on the basis of federal question jurisdiction.  (ECF 1 at 2; ECF 1-3.)  Shortly thereafter, Bob Evans filed the instant motion seeking to dismiss Acey's complaint with prejudice.  (ECF 3.)  Acey did not seek remand, nor did he respond to Bob Evans' motion to dismiss.

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Allegations "must be simple, concise, and direct" and "[n]o technical form is required."  Fed. R. Civ. P. 8(d)(1).  A

motion to dismiss for failure to state a claim upon which relief can be granted tests the legal sufficiency of a civil complaint. Fed. R. Civ. P. 12(b)(6); *Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir.1999). "[I]t does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin,* 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). A court decides whether this standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer that "the defendant is liable for the misconduct alleged." *Id.* A motion to dismiss will be granted if, "after accepting all well pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards,* 178 F.3d at 244.

A district court applies the federal pleading standard to all removed claims, including claims brought under state law. *See* Fed. R. Civ. P. 81(c)(1) (providing that the Federal Rules of Civil Procedure apply to civil actions removed from state court); *Christiansen v. W. Branch Cmty. Sch. Dist.*, 674 F.3d 927, 938−39 (8th Cir. 2012) (observing that "[b]y including federal claims in his state-court complaint, [Plaintiff] subjected himself to the possibility that the defendants would remove the case to federal court, where his complaint would be governed by the current federal pleading standard") (internal quotations and citation omitted); *Kearns v. Ford*

3

*Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) ("It is well-settled that the Federal Rules of Civil Procedure apply in federal court, irrespective of the source of the subject matter jurisdiction, and irrespective of whether the substantive law at issue is state or federal.") (Internal quotations and citation omitted.).

Additionally, when a Plaintiff fails to respond to a motion to dismiss, the Court does not deem such motion confessed, but rather has an independent duty to examine the merits of that motion.  *See generally Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993) (explaining that the failure to respond to a motion for summary judgment does not automatically establish that the moving party is entitled to judgment as a matter of law).

## III.    DISCUSSION

This action was removed by Bob Evans pursuant to 28 U.S.C. §§ 1441 and 1446, and Acey did not contest removal or seek remand.  The Court has subject matter jurisdiction over Acey's federal law claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over Acey's state-law claim pursuant to 28 U.S.C. § 1367.

Bob Evans moves to dismiss each of the claims in Acey's Complaint pursuant to Fed. R. Civ. P. 12(b)(6).  Notwithstanding the fact that Acey did not file a response, the Court exercises its independent duty to examine the merits of Bob Evans' motion pursuant to the above-described legal standards.  Accordingly, the Court will consider each of Acey's claims in turn.

### A.  Section 1981 Claim

Bob Evans first argues that Acey's Complaint fails to state a claim for which relief can be granted pursuant to section 1981 because he has not alleged facts supporting all of the elements of a prima facie case under that statute.

4

Section 1981 grants all persons within the jurisdiction of the United States "the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). The phrase "make and enforce contracts" includes "the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship," 42 U.S.C. § 1981(b), and has been applied to claims arising from race-based denial of service at restaurants. *Feacher v. Intercontinental Hotels Group*, 563 F. Supp. 2d 389, 402 (N.D.N.Y. 2008); *Lloyd v. Waffle House, Inc.*, 347 F. Supp. 2d 249, 252 (W.D.N.C. 2004) ("Section 1981 is implicated where a restaurant fails to serve an individual on account of their race.").

To succeed on a claim under section 1981, a plaintiff must demonstrate that the defendant intended to discriminate on the basis of race. *Denny v. Elizabeth Arden Salons, Inc.*, 456 F.3d 427, 434 (4th Cir. 2006). Intentional discrimination may be shown either by direct evidence or circumstantial evidence. *Williams v. Staples, Inc.*, 372 F.3d 662, 667 (4th Cir. 2004); *Johnston v. Toys "R" US-Delaware, Inc.*, 95 F. App'x 1, 6 (4th Cir. 2004) (unpublished) (citations omitted). To survive a motion to dismiss and prevail under a section 1981 claim, the plaintiff must allege facts sufficient to state a prima facie case. *See Bobbitt by Bobbitt v. Rage Inc.*, 19 F. Supp. 2d 512, 515−16 (W.D.N.C. 1998) (evaluating plaintiff's prima facie case of intentional discrimination in the context of a motion to dismiss under Fed. R. Civ. P. 12(b)(6)).

Because Acey did not respond to Bob Evans' motion to dismiss, the Court evaluates his Complaint as potentially alleging facts sufficient to establish a prima facie case by both direct evidence and circumstantial evidence of intentional discrimination. *See Custer*, 12 F.3d at 416; *Williams*, 372 F.3d at 667.

When a plaintiff seeks to prove his or her section 1981 action by direct evidence, he must establish a prima facie case by showing that (1) he is a member of a racial minority, (2) the

defendant intended to discriminate against him on the basis of race, and (3) the discrimination concerned a privilege protected under section 1981.  *Johnson*, 95 F. App'x at 6 (citations omitted).  "'[O]nly the most blatant remarks, whose intent could be nothing other than to discriminate' on the basis of some impermissible factor" constitutes direct evidence.  *Long v. Aronov Realty Mgmt., Inc.*, 645 F. Supp. 2d 1008, 1017 (M.D. Ala. 2009) (citations omitted).  Additionally, "to be direct evidence of discriminatory intent, evidence must also 'indicate that the complained-of [action] was *motivated* by [the person's state of mind].'" *Id.* at 1019 (citing *Damon v. Fleming Supermarkets of Fla., Inc.,* 196 F.3d 1354, 1359 (11th Cir.1999) (emphasis added by *Damon* court)).

Here, at least the first factor appears to be undisputed (Acey, as an African American, is a member of a protected class), but Bob Evans contends that Acey has failed to allege facts suggesting that it intentionally discriminated against him on the basis of race.  The factual allegations supporting this second factor are, in full, that the hostess at the Restaurant did not seat Acey in the front of the restaurant as he had requested, but instead took him to the back, slammed menus on the table, and said, "You damned idiot."  (ECF 1-1 at 3.)

Such facts are far from blatant remarks indicating a racial motivation, and, indeed, Acey's complaint is silent as to the hostess' motivation.  The Court finds that these alleged facts are too sparse to support a conclusion that the hostess intended to discriminate against Acey based on his race.  *See Johnson*, 95 F. App'x at 7 (concluding that the statement "you looked suspicious" was too speculative to support a conclusion that the defendant deactivated plaintiff's gift cards based on her race and, accordingly, affirming a grant of summary judgment for the defendant on the ground that plaintiff failed to present direct evidence of racial discrimination); *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 277, 280−81 (4th Cir. 2000) (declining to "impute a

racial character to [certain behavior by Plaintiff's supervisor, including statement that plaintiff was "not of the caliber" to be a manager] based simply on [plaintiff's] conjecture"); *compare Denny v. Elizabeth Arden Salons, Inc.*, 456 F.3d 427, 434−35 (holding that plaintiffs presented direct evidence of a salon's intent to discriminate where evidence suggested that the salon refused to perform on a contract for an explicit race-based reason, namely an employee's assertion that the salon did not "do black people's hair"). Accordingly, the Court concludes that Acey has not stated a section 1981 claim with factual allegations that represent direct evidence of discriminatory intent.

When a plaintiff seeks to prove by circumstantial evidence a section 1981 case of discrimination relating to the purchase of goods or services, a plaintiff must establish that: (1) he is a member of a protected class; (2) he sought to enter into a contractual relationship with the defendant; (3) he met the defendant's ordinary requirements to pay for and to receive goods or services ordinarily provided by the defendant to other similarly situated customers; and (4) he was denied the opportunity to contract for goods or services that was otherwise afforded to white customers.[2] *Williams*, 372 F.3d at 667−68; *see also Denny*, 456 F.3d 443 n.2 (noting that when a

---

[2] The Court acknowledges that some disagreement appears to exist in this Circuit with respect to the potential application of an alternative formulation of the elements for establishing a prima facie case of discriminatory intent by circumstantial evidence. This alternative formulation was first articulated in *Callwood v. Dave & Buster's, Inc.*, 98 F. Supp. 2d 694, 707 (D. Md. 2000). As described by the Fourth Circuit, "*Callwood* purports to provide an alternative analytical approach in public accommodation discrimination cases in which there is scant evidence as to how members of the protected class are treated differently from members outside the class." *Williams*, 372 F.3d at 668 n.5. The Fourth Circuit does not, however, appear to have ever adopted the *Callwood* framework in either a published or unpublished decision. *See Jones v. K & R Nutrition, Inc.*, 1:09CV413, 2010 WL 322019, at *5 n.2 (M.D.N.C. Aug. 4, 2010) (observing that it is "not clear whether" the Fourth Circuit even permits *Callwood* as an alternative to the prima facie test articulated in *Williams*); *Gilyard v. Northlake Foods, Inc.*, 367 F. Supp. 2d 1008, 1013−14 (E.D. Va. 2005) (adopting the elements of a prima facie case stated in *Williams* and explicitly rejecting plaintiffs argument to employ the *Callwood* framework ). Moreover, because Acey failed to respond to Bob Evans' motion to dismiss, he has not argued that the Court should apply the prima facie test described in *Callwood* in the instant case. *Cf. Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 407 (6th Cir. 1992) (explaining that a district court must "intelligently and carefully review the legitimacy of . . . an unresponded-to motion, even as it refrains from actively pursuing advocacy or inventing the *riposte* for a silent party"). Accordingly, the Court will employ the elements of a prima facie case as articulated by the Fourth Circuit in *Williams*.

7

plaintiff presents no direct evidence of a defendant's discriminatory intent, the Fourth Circuit has applied the framework described in *Williams* and other cases to section 1981 claims involving contracts for the purchase of goods or services).

Here, the first three factors appear to be satisfied:  Acey, as an African American, is a member of a protected class and he sought to enter a contractual relationship with Bob Evans by purchasing a meal at its restaurant, which was open to the general public.  (ECF 1-1 at 3−4.) Bob Evans argues that Acey has not alleged facts indicating that he was deprived of an opportunity to contract with the Restaurant.  (ECF 4 at 3.)

The Court agrees.  Accepting Acey's assertions as true, Acey was treated rudely by the Restaurant's hostess after he and his daughter arrived at the Restaurant.  Thereafter, numerous employees and the manager apologized to Acey for the hostess's rudeness.  Acey was offered a free meal, which he declined.  Acey's allegations simply do not suggest that he was denied any services, let alone done so in a way at all related to his race.  *See, e.g.*, *Ross v. Flo Foods, Inc.*, Civ. No. 3:10CV356-DSC, 2011 WL 3422657, at *2−3, 5 (W.D.N.C. Aug. 4, 2011) (finding that African-American plaintiffs were not denied the opportunity to contract for goods or services at defendant restaurant where, after being physically assaulted by the restaurant's owner, they were given a refund and offered a complimentary meal which they were unable to eat before eventually leaving); *Feacher*, 563 F. Supp. 2d at 398, 404 (dismissing section 1981 claim where hostess asked African American plaintiffs, "What do you people want here?" when plaintiffs walked into the restaurant and sat them in the back of the restaurant even though there were empty tables elsewhere and plaintiffs felt humiliated; the court found, among other factors, that it was not reasonable to conclude that complained-of actions were laced with racial innuendo or done for a discriminatory reason); *compare Bobbitt*, 19 F. Supp. 2d at 514, 519−20

8

(distinguishing "poor service" from actionable behavior that "altered a fundamental characteristic of the service provided by the public accommodation solely on the basis of race"; the court found such a characteristic where the restaurant manager called two police officers and required a group that included two African American patrons to prepay for their meals because another group of African American patrons had run out without paying the day prior).

Moreover, Acey's complaint contains no allegations as to what occurred after he declined the manager's offer of a free meal. Acey asserts that he was "humiliated" and it is arguable that an inference reasonably could be made that he left the Restaurant as a result of such behavior. Even if such an inference were made, however, it does not establish that he was denied the opportunity to contract. *See, e.g.*, *Bagley v. Ameritech Corp.*, 220 F.3d 518, 521 (7th Cir. 2000) (holding that defendant business did not refuse service where an employee, whom African American plaintiff had previously overheard saying "I hate f---ing Mexicans", told the plaintiff "I will not serve you" and gave him the middle finger and, thereafter, plaintiff left without attempting to consummate the transaction with another employee who the record suggested would have helped plaintiff); *compare, e.g.*, *Eddy v. Waffle House, Inc.*, 482 F.3d 674, 678 (4th Cir. 2007) *cert. granted, judgment vacated on other grounds*, 554 U.S. 911 (2008) (concluding that discrimination interfered with a contractual interest even though African American plaintiffs left the restaurant because "a reasonable person would not expect to be served in an openly hostile environment" where one plaintiff was told by a restaurant employee "We don't serve n---- here", because, the court explained, "no single act can more quickly . . . create an abusive environment than the use of an unambiguously racial epithet") (citations omitted).

Nor has Acey alleged any facts regarding the services otherwise afforded to white customers from which the Court could infer discriminatory intent. Indeed, Acey's complaint is

silent as to the treatment of other customers.  *See, e.g.*, *Feacher*, 563 F. Supp. 2d at 403 (noting that a reasonable fact finder could conclude that the denial of service to African American plaintiffs was motivated by considerations of plaintiffs' race where two white couples were allowed into the restaurant but plaintiffs were told "We're closed for you"); *Bobbitt*, 19 F. Supp. 2d at 518−19 (contrasting the treatment plaintiffs' alleged that they experienced with their assertion that white patron was treated differently); *see also Riley v. ITT Fed. Servs. Corp.*, CIV.A.3:99CV02362AWT, 2001 WL 194067, at *2 (D. Conn. Feb. 22, 2001) (observing that "[t]he intent element of a § 1981 claim may be satisfied by an allegation that similarly situated employees who are not members of the protected class were treated differently" and dismissing claim where plaintiff had not sufficiently alleged that a similarly situated white employee was treated differently); *see also compare Lloyd*, 347 F. Supp. 2d at 254 (finding an actionable denial of service sufficient to state a prima facie case of race discrimination where many other white individuals who had arrived at the restaurant after plaintiffs were offered immediate service but plaintiffs, one of whom was African American, were not).

Ultimately, Acey's complaint does "little more than cite to [his] mistreatment and ask the court to conclude that it must have been related to [his] race." *Ross v. Flo Foods, Inc.*, Civ. No. 3:10CV356-DSC, 2011 WL 3422657, at *5 (W.D.N.C. Aug. 4, 2011) (citations omitted). Because Acey's factual allegations neither directly nor circumstantially demonstrate that Bob Evans intended to discriminate against Acey on the basis of race, they are insufficient to state a claim under section 1981.  *See id.*; *see also Denny*, 456 F.3d at 435 (explaining that "[not] every person who walks into a commercial establishment and is denied service or is otherwise dissatisfied can maintain a § 1981 cause of action. . . . loss of business—not litigation—is the usual cost of customer dissatisfaction").

Accordingly, the Court concludes that Acey's section 1981 claim must be dismissed.

B. *Title II Claim*

Bob Evans next argues that Acey's Title II claim should be dismissed because Acey seeks compensatory and punitive damages, whereas only injunctive relief is available under Title II. Alternatively, Bob Evans argues that even if Acey's Complaint could be construed as seeking injunctive relief, Acey lacks standing to pursue such relief because he has not alleged any facts indicating a threat of present or future harm. Finally, Bob Evans argues that even if Acey has standing to pursue injunctive relief his Complaint nonetheless fails to state a Title II claim. (ECF 4 at 4−6.)

Title II provides, in pertinent part, that "[a]ll persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation . . . without discrimination or segregation on the ground of race, color, religion, or national origin." 42 U.S.C. § 2000a(a). A restaurant is a place of public accommodation under the statute provided that "its operations affect commerce," that is, that "it serves or offers to serve interstate travelers or a substantial portion of the food which it serves . . . has moved in commerce . . . ." 42 U.S.C. § 2000a(b)(2), (c).

The only relief available under Title II is injunctive relief. *Kelser v. Alcazar Shriners*, 2:06-CV-818, 2007 WL 484551, at *3 (M.D. Ala. Feb. 9, 2007) (citing *Newman v. Piggie Park Enters., Inc.,* 390 U.S. 400, 401−02 (1968) and explaining that section 2000a provides a private cause of action for an aggrieved party to receive injunctive relief, but that a plaintiff cannot recover damages).

To establish standing for injunctive relief, a plaintiff must satisfy the requirements of Article III standing, including, as relevant here, that he has suffered an "injury in fact."

11

*McBurney v. Cuccinelli*, 616 F.3d 393, 410 (4th Cir. 2010) (citations omitted).  To meet the "injury in fact" requirement, a party bears the burden of proving "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id.* (citations omitted).  "[P]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects."  *City of Los Angeles v. Lyons,* 461 U.S. 95, 102 (1983) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495−96 (1974)).   Rather, "in order to claim injunctive relief a plaintiff must show "a real or immediate threat that [he] will be wronged again—'a likelihood of substantial and immediate irreparable injury.'" *Jackson v. Motel 6 Multipurpose, Inc.,* 130 F.3d 999, 1007 (11th Cir. 1997) (citing *Lyons*, 461 U.S. at 111); *see also Godbey v. Iredell Mem'l Hosp., Inc.*, 5:12-CV-00004-RLV, 2013 WL 4494708, at *4 (W.D.N.C. Aug. 19, 2013) (explaining that to obtain injunctive relief "[a] plaintiff must . . . allege a future encounter with the defendant that is likely to lead to a similar violation of some protected right").

To establish a Title II claim, a plaintiff must demonstrate that he (1) is a member of a protected class, (2) attempted to contract for services and afford himself or herself of the full benefits and enjoyment of a public accommodation, (3) was denied the full benefits or enjoyment of a public accommodation, and (4) such services were available to similarly situated persons outside his or her protected class who received full benefits or were treated better.  *Jackson v. Waffle House, Inc.*, 413 F. Supp. 2d 1338, 1361 (N.D. Ga. 2006) (citation omitted).

Here, Acey, does not expressly seek injunctive relief.  Rather, with respect to remedies, Acey requests "compensatory damages, punitive damages, costs, attorney's fees, expert witness fees, Court costs and other such relief as this court deems just and proper."  (ECF 1-1 at 6.)  *See*

*Gennell v. Denny's Corp.*, 378 F. Supp. 2d 551, 556 (D. Md. 2005) (dismissing Title II claim where plaintiff requested only compensatory and punitive damages, but not injunctive relief).

The Court declines to dismiss Acey's Title II claim exclusively on this basis, however, because the phrase "such other relief as this court deems just and proper" could at least arguably be construed as a request for injunctive relief. Even so construed, however, Acey still cannot prevail on his Title II claim because he has not alleged facts demonstrating that he has standing to pursue such relief.

Rather, Acey has simply described a single past incident in which he was treated rudely by an employee of Bob Evans. Acey has not alleged that any threat exists that he (or, for that matter, any other African American patron) is subject to similar future harm from Bob Evans or that any "continuing, present adverse effects" have accompanied the treatment he received. Indeed, Acey has not even alleged that he seeks or desires to return to the Restaurant. *See, e.g.*, *Butler v. Scripps Green Hosp.*, 08CV2211 JLS (RBB), 2010 WL 1292147, at *4 (S.D. Cal. Mar. 30, 2010) (explaining that "past wrongs, standing alone, do not amount to a real and immediate threat of injury sufficient to give Plaintiff standing to seek injunctive relief" and dismissing claim where plaintiff did not allege that complained-of behavior was continuing or likely to recur) (internal quotation and citation omitted); *Kelser*, 2007 WL 484551 at *3 (finding that plaintiff failed to state a claim under Title II where there were no allegations that plaintiff was subject to any future harm but rather only allegations at most supporting an inference of speculation of future harm); *Schley v. Rest. Co.*, 205CV85FTM29DNF, 2005 WL 1705501, at *2 (M.D. Fla. July 19, 2005) (dismissing Title II claim where plaintiff did not expressly seek injunctive relief and noting that even though plaintiff's complaint also sought "all other proper relief" it did not contain any factual allegations supporting injunctive relief, such as allegations regarding a real or

immediate threat that plaintiff would be wronged again); *see also Rothman v. City of Chicago*, 02 C 3533, 2004 WL 2271851, *2−3 (N.D. Ill. Oct. 6, 2004) *aff'd*, 145 F. App'x 177 (7th Cir. 2005) (finding that plaintiff failed to make the allegations necessary to assert standing for pursuing injunctive relief under the ADA where complaint alleged only past wrongs); *see also Bray v. RHT, Inc.*, 748 F. Supp. 3, 5 (D.D.C. 1990) *aff'd sub nom. Bray v. Hebble*, 976 F.2d 45 (D.C. Cir. 1992) (observing in granting summary judgment that plaintiff sought damages and not injunctive relief, and that there was also no proof that African American patrons were prevented from entering defendant restaurant such that would justify an injunction under Title II); *compare, e.g.*, *Nat'l Ass'n for the Advancement of Colored People, Inc. v. Molly Darcy, Inc.*, 4:11-CV-01293-RBH, 2012 WL 4473138, at *3−4 (D.S.C. Sept. 26, 2012) (finding that plaintiffs had shown an injury that was more than speculative or hypothetical—and therefore had standing to seek an injunction—where plaintiffs alleged intentional racial discrimination by defendant restaurant's decision to close each year during a predominantly African American motorcycle festival but not during a predominately white motorcycle festival, and further alleged that they intended to dine at defendant restaurant during future African American motorcycle festivals).[3]

Accordingly, to the extent that his complaint can be understood to be requesting injunctive relief under Title II, the Court concludes that Acey has not alleged any facts supporting standing to pursue such relief.

---

[3] To the extent that Acey also alleges that he received an anonymous phone call in which he was told that "if he did not drop the 'Bob Evans thing' something would happen" (ECF 1-1 at 4), the Court cannot conclude that this represents a continuing adverse effect sufficient to confer standing. For one thing, a single phone call is not a *continuing* adverse effect. For another, Acey's Title II claim is very clearly based only on the treatment that he experienced "on the date and at the location alleged" (ECF 1-1 at 5), namely the rude behavior of the Restaurant's hostess. It is not a reasonable inference to conclude that the call suggests Acey is in some way at risk to experience similar treatment at the Restaurant in the future. *See Am. Postal Workers Union v. Frank*, 968 F.2d 1373, 1376 (1st Cir.1992) (noting that "past exposure to harm will not, in and of itself, confer standing upon a litigant to obtain equitable relief absent a sufficient likelihood *that he will again be wronged in a similar way*") (internal quotations omitted) (emphasis added). Finally, because he did not file a response to Bob Evans' motion to dismiss, Acey has provided no authority in support of a conclusion that such phone call could serve as the basis for injunctive relief here, nor has any directly applicable authority been independently identified.

14

Finally, even were the Court to conclude that Acey has sought injunctive relief *and* that he has standing to pursue such relief, Acey still could not prevail because his complaint fails to state a claim under Title II.  This is so because the conduct of which Acey complains does not demonstrate that Acey was denied the full benefits or enjoyment of a public accommodation. Rather, Acey was treated rudely by the Restaurant's hostess and was thereafter offered a free meal and received apologies from other staffers.  Moreover, Acey's complaint is devoid of any allegations that any services that he may not have received were available to similarly situated persons outside his or her protected class who received full benefits or were treated better.  *See Bobbitt*, 19 F. Supp. 2d at 522 (observing that "there may be some level of bad service that would suffice to satisfy [Title II]" but finding that it was not reached where plaintiffs were both ignored and treated rudely by a waitress while white customers were treated differently, and when plaintiffs complained about the quality of the food the assistant manager touched their food with his fingers to demonstrate that it was satisfactory); *compare Powell v. Super 8 Motels, Inc.*, 181 F. Supp. 2d 561, 565 (E.D.N.C. 2000) (concluding that allegations that an African American traveler was told by a white desk clerk that a motel had no rooms available but that traveler's white companion was told immediately thereafter that rooms were, in fact, available, was sufficient to state a Title II claim and survive motion to dismiss).

For these reasons, the Court finds that Acey's Title II claim must be dismissed.

## C.  WVHRA Claim

### 1.  Supplemental Jurisdiction

Bob Evans also moves to dismiss Acey's claim under the WVHRA.  Having found, however, that Acey's complaint fails to state a claim under either section 1981 or Title II, which

claims are the basis of the Court's jurisdiction,[4] the Court must first determine whether to exercise or decline to exercise supplemental jurisdiction over Acey's remaining state law claims. *See Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995).

District courts "enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished." *Shanaghan*, 58 F.3d at 110. The Court may decline to exercise supplemental jurisdiction over a claim for reasons listed in 28 U.S.C. § 1367(c). *See Brookshire Bros. Holding, Inc. v. Dayco Prods., Inc.,* 554 F.3d 595, 601–02 (5th Cir. 2009); *see also Arrington v. City of Raleigh*, 369 F. App'x 420, 423 (4th Cir. 2010) (applying section 1367(c) factors in a review of a district court's decision to exercise jurisdiction in a removed action). Section 1367(c) provides that the district court may decline to exercise supplemental jurisdiction if "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction."

In addition to these statutory considerations, other "factors that inform this discretionary determination are convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy." *Shanaghan*, 58 F.3d at 110; *Arrington*, 369 F. App'x at 423−24.

Here, having found that Acey's complaint fails to state a claim on which relief can be granted under section 1981 and Title II, the Court has dismissed all claims over which it has

---

[4] As noted above, *supra* Part I, Bob Evans invoked this Court's federal question jurisdiction when it removed this civil action. (ECF 1 at 2; ECF 1-3 at 1.) Additionally, although Acey asserts in his Complaint that he is a citizen of West Virginia (ECF 1-1 at 2), nothing has been identified in the record with respect to Bob Evans' corporate citizenship. Accordingly, the Court cannot conclude that diversity jurisdiction exists as an independent jurisdictional basis, nor has either party asserted that diversity jurisdiction exists.

original jurisdiction.  *See* § 1367(c)(3).  The Court concludes, however, that on balance the above-listed factors favor exercising jurisdiction over Acey's remaining state law claim.

Specifically, Acey's state law claims relate to precisely the same conduct on which his federal claims are based.  Moreover, Acey did not contest removal, and he has done nothing to defend his claims against dismissal in this court.  Additionally, Acey's WVHRA claim does not raise novel or complex issues of West Virginia law, but is a relatively straightforward cause of action with legal standards that appear to be similar to those governing racial discrimination in public accommodation claims in the federal context, which standards the Court has already considered with respect to Acey's federal claims.  Accordingly, under these circumstances, the Court finds that none of the statutory factors provided in section 1367(c) so strongly counsel in favor of declining to exercise jurisdiction and that the interests of judicial economy, convenience, and fairness to the parties are best served by the Court exercising jurisdiction to resolve Acey's remaining state law claims.

### 2.  Merits

The WVHRA makes it an unlawful discriminatory practice:

> "[f]or any persons being the . . . manager, superintendent, agent, or employee of any place of public accommodations to . . . [r]efuse, withhold from or deny to any individual because of his or her race . . . either directly or indirectly, any of the accommodations, advantages, facilities, privileges or services of the place of public accommodations [.]"

W. Va. Code § 5–11–9(6)(A).[5]

---

[5] Acey's Complaint simply alleges a violation of the WVHRA without citation to a particular statutory provision. Bob Evans contends that Acey's claim arises under W. Va. Code 5−11−9(6)(A), and Acey, as noted, did not respond to that characterization.  In light of the Complaint's reference to Acey's having been denied "goods, services, facilities, privileges, advantages, and accommodations," however, the Court concurs with Bob Evans' characterization of Acey's WVHRA claim as arising under W. Va. Code. 5-11-9(6)(A).

17

In order to make a prima facie case of discrimination in a place of public accommodation under the WVHRA, the complainant must prove the following elements:

> (a) that the complainant is a member of a protected class;
>
> (b) that the complainant attempted to avail himself of the "accommodations, advantages, privileges or services" of a place of public accommodation; and
>
> (c) that the "accommodations, advantages, privileges or services" were withheld, denied or refused to the complainant.

Syl. Pt. 1, *K-Mart Corp. v. W. Virginia Human Rights Comm'n*, 383 S.E.2d 277, 277, 281 (W. Va. 1989).  "The term 'place of public accommodations' means any establishment . . . which offers its services, goods, facilities or accommodations to the general public . . . ."  W. Va. Code Ann. § 5-11-3(j).

Additionally, as another district court has explained, "[t]he WVHRA 'prohibits *discrimination . . . on the basis of* race, religion, color, national origin, ancestry, sex, age, blindness, or handicap.'  Therefore, a cause of action under the WVHRA must be predicated upon an unlawful motivation, not simply an unlawful injury." *Arbaugh v. Bd. of Educ., Cnty. of Pendleton*, 329 F. Supp. 2d 762, 772 (N.D. W. Va. 2004) (citing *Vest v. Bd. of Edu.*, 455 S.E.2d 781, 784 (W. Va. 1995) (emphasis added by the *Arbaugh* court)).

Here, Bob Evans does not dispute that the Restaurant is a place of public accommodation within the meaning of the WVHRA.  Moreover, the first two elements of Acey's prima facie case are clearly satisfied by the factual allegations in his complaint:  Acey, as an African American, is a member of a protected class, and Acey attempted to avail himself of the services that Bob Evans offered at the Restaurant.

Acey's complaint, however, fails to allege facts indicating that any accommodations or services were withheld, denied, or refused.  *See, e.g.*, *K−Mart*, 383 S.E.2d at 281−82 (finding no

violation of section 5-11-9 where Syrian family was watched by employees and a police officer while shopping but there was no indication that the family was "actually denied, refused, or withheld any services or amenities as required by [section 5-11-9]").

Similarly, there are no factual allegations to support a finding that the rude behavior Acey experienced, even if could be construed as a denial or refusal of service, was in any way based upon an unlawful motivation. *See Arbaugh*, 329 F. Supp. 2d at 772. There are simply no factual allegations in the Complaint from which to infer that the hostess' behavior was *because of* Acey's race, or, for that matter, that he was denied any other services *because* of his race. As the West Virginia Supreme Court observed, "[s]tanding alone, we do not believe rudeness is sufficient to prove a prima facie case of discrimination." *K−Mart*, 383 S.E.2d at 282.[6]

Additionally, the West Virginia Supreme Court of Appeals has observed that similar standards have been adopted and applied in both federal and state courts with respect to other types of claims arising under the WVHRA. *See, e.g.*, *Erps v. W. Va. Human Rights Comm'n*, 680 S.E.2d 371, 379 (2009) (discussing the law surrounding hostile work environment claims under W. Va. Code § 5-11-9 and Title VII). To the extent that the same is true with respect to the instant claim, the Court's prior discussion with respect to Acey's federal claims lends further support to the conclusion that Acey has failed to state a claim upon which relief can be granted under the WVHRA.

Accordingly, the Court concludes that Acey's WVHRA claim must be dismissed.

---

[6] The Court observes that its conclusion would be the same even under West Virginia's pleading standard. *See generally Roth v. DeFeliceCare, Inc.*, 700 S.E.2d 183, 196 (W. Va. 2010) (Benjamin, J. dissenting) (comparing West Virginia's pleading standard with "heightened" federal standards). The issue is not that Acey has made conclusory assertions that fail to satisfy *Iqbal* and *Twombley*, but rather that Acey has made *no* factual allegations to support a finding that Bob Evans withheld, denied, or refused services to him, let alone that it did so on the basis of his race.

*IV.    CONCLUSION*

For these reasons, the Court **GRANTS** Bob Evans' motion to dismiss [ECF 3] in its entirety.   Therefore, it is **ORDERED** that this civil action be, and the same is hereby, **DISMISSED WITH PREJUDICE** and retired from the docket of the Court.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record.

ENTER:      March 13, 2014

_____

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE